

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

**********************************************************************

| | | |
|---|---|---|
| | * | |
| RONALD M. WOLBERT, | * | CIV 10-1008 |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| BARRY HILLESTAD, DAY COUNTY | * | |
| SHERIFF; DANNY R. SMIENS, DAY | * | |
| COUNTY ATTORNEY, and | * | |
| COUNTY OF DAY, SOUTH DAKOTA, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**********************************************************************

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 contending that defendants violated his Constitutional rights by bringing an alleged malicious prosecution. The parties filed cross-motions for summary judgment and plaintiff filed a motion for sanctions.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering defendants' motion for summary judgment, this Court must view the facts in the light most favorable to the plaintiff, and give plaintiff the benefit of all reasonable inferences that can be drawn from t he facts. Donaho, 74 F.3d at 897-98. The undisputed facts are set forth below.

## FACTUAL BACKGROUND

Ronald Wolbert ("Wolbert") was convicted of criminal sexual conduct in the State of Minnesota in 1995. Imposition of sentence was stayed and he was placed on probation. Wolbert's offense of conviction was, according to the Minnesota Supreme Court, a "predatory offense" involving sexual contact with a 15 year old girl who was drinking alcohol while she was

babysitting his children. <u>Wolbert v. State</u>, 2010 WL 935465 at 2 (Minn. 2010). His conviction required him to register in Minnesota as a predatory offender. *Id.* At 3.

Wolbert moved to Webster, South Dakota, in 2000. In 2001, the State of Minnesota reduced the conviction to a misdemeanor and ordered that Wolbert was "discharged from probation and restored to all civil rights and to full citizenship with full right to vote and hold office the same as if said conviction had not taken place." In 2003, Wolbert moved to Canton, South Dakota. He was arrested in Lincoln County, South Dakota, in 2005 for driving under the influence. He thereafter registered as a sex offender in Lincoln County, following contact from the Lincoln County Sheriff and discussions as to whether his 1995 Minnesota conviction required registration. Soon thereafter he resigned his sales job in Canton and moved to Minnesota. In 2008, he received a letter from the Minnesota Bureau of Criminal Apprehension notifying him that he was non-compliant with Minnesota's sex offender registration requirement arising out of his 1995 conviction.

Wolbert was arrested in March of 2008, in Day County, South Dakota, for driving under the influence. His initial appearance was set for April 30, 2008. He failed to appear for that hearing. He was, however, in Day County that day, visiting the Webster Elementary School to have lunch with the children of a friend. He signed the guest register as "Little Ron," a nickname, instead of his legal name. Following his visit, three girls reported the defendant's visit to parents and claimed that he had behaved oddly and scared them.

Wolbert was subsequently charged in Day County with felony loitering within a community safety zone by a convicted sex offender in violation of SDCL 22-24B-24. On February 10, 2010, Wolbert, representing himself, pleaded no contest to a reduced charge of misdemeanor trespass and was sentenced to a fine of $125, court costs of $79.98, 30 days of jail time with all jail time suspended, and no contact with three girls whose reports caused the investigation into Wolbert's visit to the school. Two weeks later, he instituted this action for malicious prosecution for loitering and trespass and for defamation. He claims there was no factual basis for the trespass charge and that his 1995 Minnesota conviction did not require him to register as a sex offender so he could not be found guilty of loitering in a community safety zone.

2

## DECISION

Plaintiff fails to understand that United States District Courts do not sit as courts of appeal from state courts. Nor do United States District Courts supervise state courts.

Plaintiff here voluntarily entered into an oral plea agreement with the State of South Dakota. He voluntarily pled no contest to a misdemeanor charge in state court in Webster, South Dakota. State Circuit Court Judge Jon Flemmer found and ruled that there was a factual basis for the charge (reduced from a felony charge that was dismissed in exchange for the plea to the misdemeanor). The plea was accepted and sentence was imposed. He has at no time sought to have Judge Flemmer set aside the plea and the conviction. He took no appeal from the state court judgment to the South Dakota Supreme Court (as he had the absolute right to do) and the conviction and sentence are now final and not subject to collateral attack. Obviously, if the defendant felt that he had a defense to the charge, he should have presented it to the state court. While his plea was "no contest", he did not challenge the factual basis for the charge before the state court judge. He could have stood trial but accepted the plea agreement, freeing himself from the danger of a felony prosecution.

South Dakota law prohibits registered sex offenders (which applies to plaintiff) from loitering within 500 hundred feet of any school, public park, and public playground. SDCL 22-24B-24. The statute defines "loitering" as "remain[ing] for a period of time and under circumstances that a reasonable person would determine is for the primary purpose of observing or contacting minors[.]" SDCL 22-24B-22. Had plaintiff gone to trial facing this charge, the fact finder, probably a jury, would have to determine whether plaintiff was guilty or not guilty of the charge of loitering as defined above. The South Dakota Supreme Court has recently determined in a unanimous opinion that the statute is constitutional. State v. Stark, 2011 S.D. 46, opinion filed August 10, 2011.

Plaintiff now seeks in federal court to overturn and reject his conviction. He alleges that Judge Flemmer erred in accepting his plea and, thus, in sentencing him. He alleges that there was not a sufficient factual basis for the conviction although Judge Flemmer found that there was a sufficient factual basis. Plaintiff sets forth no explanation as to whether he seeks to reinstate the felony charge if the misdemeanor conviction is set aside. There is no independent claim presented that could be addressed without setting aside the conviction of the plaintiff.

3

## I. Rooker-Feldman Doctrine.

The Rooker-Feldman (Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983)), doctrine forecloses indirect attempts to undermine state court decisions. Likewise, a federal constitutional claim, e.g. under 42 U.S.C. §§ 1983 and 1985(3) and 18 U.S.C. § 1964(a), is "inextricably intertwined" with a state court judgment if the federal claim could succeed only to the extent that the state court wrongfully decided the issue before it. The doctrine applies even though a party to the federal action was not a party in the state court action. *See* Lemonds v. St. Louis County, 222 F.3d 488, 492-95 (8th Cir. 2000). The doctrine applies to claims for injunctive and declaratory relief, as well. Keene Corp. v. Cass, 908 F.2d 293, 297 (8th Cir. 1990).

The doctrine interprets 28 U.S.C. §1257 to deprive lower federal courts of jurisdiction to hear challenges to state court judgments except in habeas corpus proceedings and this applies to state proceedings that are essentially judicial in nature. Feldman, 460 U.S. at 476. *See also* Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003). Even claims which could have been raised in the state court proceedings but were not raised are barred since otherwise the federal court "is in essence being called upon to review a state court decision." Feldman, 460 U.S., at 482 n.16. *See also* Mosby v. Ligon, et al., 418 F.3d 927 (8th Cir. 2005). The essential point is that federal district courts are courts of original jurisdiction. By statute they are precluded from serving as courts of appeal to review state court judgments, since that appellate function is reserved to the United States Supreme Court. *See* 28 U.S.C. § 1257.

The United States Supreme Court in 2005 narrowed the application of the Rooker/Feldman doctrine to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the (federal) court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 125 S.Ct. 1517, 1521-22 (2005).

"*Exxon Mobil* makes clear that the *Rooker/Feldman* doctrine precludes federal district court jurisdiction only if the federal suit is commenced after the state court proceedings have ended. *See id.* at 1527 ('[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.'); *see also Mothershed v. Justices of*

4

*Supreme Court*, 410 F.3d 602, 604-05 n. 1 (9th Cir. 2005) (determining whether state-court proceedings were complete as the first step of a post-*Exxon Mobil Rooker/Feldman* analysis). There is no judgment to review if suit is filed in federal district court prior to completion of the state-court action. Rather, '[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.' *Exxon Mobil*, 125 S.Ct. at 1527." Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005). The foregoing discussion from Dornheim causes no problem here since plaintiff's state criminal prosecution was final long ago. *See also* Riehm v. Engelking, 538 F.3d 952, 964 (8th Cir. 2008). "*Rooker-Feldman* 'is a narrow doctrine.' *Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006).

Further language from Riehm is important.

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.

Riehm, 538 F.3d at 965 (*quoting* Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003)). The Riehms were not challenging the state court's issuance of an ex parte order but rather acts undertaken by the defendants 'in seeking and executing' the order. Therefore, in Riehm, the Rooker-Feldman doctrine was not applied.

In The Minch Family LLLP, et al. v. Buffalo-Red River Watershed District, et al., 628 F.3d 960, 965 (8th Cir. 2010), the plaintiff did not seek rejection of the state court's order, but rather complained that the appellees' acts exceeded the order's scope. Minch's claims called for interpretation, not rejection of the state court's order. Therefore, as in Riehm, the Rooker-Feldman doctrine did not apply.

Rooker-Feldman deprives this court of jurisdiction over the subject matter of plaintiff's lawsuit. The action should be dismissed on that basis alone.

## II. Immunity.

Assuming that plaintiff could escape the prohibitions of the Rooker-Feldman doctrine, it is important to briefly discuss the doctrine of qualified immunity which Mr. Smiens, as the duly elected and acting States' Attorney for Day County, and Mr. Hillestad, as the duly elected and acting Sheriff for Day County, have, assuming satisfaction of certain conditions precedent. The

5

doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The doctrine is not merely a defense.  It is an entitlement not to stand trial or face the other burdens of litigation. Claims of qualified immunity are to be resolved at the earliest possible stage of the litigation.  If a plaintiff fails to make out a constitutional violation, the qualified immunity inquiry comes to an end and the government officials are entitled to qualified immunity.  The court, in evaluating a claim of qualified immunity, must first decide whether the facts, looked at in the light most favorable to the plaintiff, show a constitutional violation.  Having set forth general principles, the court will turn to how these principles apply in the present case.

The defendants clearly did not violate any constitutional or statutory rights of the plaintiff.  The individual defendants brought a criminal charge that, according to the plaintiff's claims in federal court, had no merit based upon the facts.  If the facts did not support the charge, the solution for the plaintiff was to litigate the matter in state court, i.e. to defend himself.  It would then have been determined by the fact finder, probably a jury, whether there was a factual basis for the criminal charge as filed.  Plaintiff failed to avail himself of the right to go to trial with the presumption of innocence and the burden of the prosecutor to prove the charge beyond a reasonable doubt.  In the present case, no Constitutional claim can be established.  The prosecutor had the right to bring the charge and the sheriff had the right to investigate the charge. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution."  Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  In addition, the defendants had the clear legal right to rely on Judge Flemmer to decide whether or not to accept the plea agreement and the plea itself.  Once again, if Judge Flemmer was in error, the solution was to appeal.  The individual defendants are protected by the doctrine of qualified immunity and this action must be dismissed on that basis as well.

Defendant Smiens would further be entitled to summary judgment on the basis of absolute immunity to the extent that he was "engaged in prosecutorial functions that are 'intimately associated with the judicial process.'"  Schenk v. Chavis, 461 F.3d 1043, 1046 (8th

6

Cir. 2006) (*quoting* Anderson v. Larson, 327 F.3d 762, 768 (8th Cir. 2003)). "'[Actions connected with initiation of prosecution, even if those actions are patently improper' are immunized." Schenk v. Chavis, 461 F.3d at 1046 (*quoting* Williams v. Harte, 827 F.2d 1203, 1208 (8th Cir. 1987)). Smiens' acts in preparing and filing a charging document and appearing in court to present the plea agreement to the judge easily fall within the scope of absolute immunity.

### III. Governmental Entity § 1983 Liability.

Day County has no liability of any kind. The individual defendants are officials elected by the voters of Day County. Day County is not their employer as such. The county acts through its county commissioners who have no right to direct the sheriff as to what cases to investigate and to report to the prosecutor for possible prosecution. The commissioners have no right to direct the prosecutor as to what charges to bring, what charges to dismiss, and what charges to reduce. Day County has absolutely no connection with the prosecution of plaintiff, let alone this case pending in federal court.

Further, a local governing body cannot be held liable *solely* because it employs a tortfeasor – in other words, a county cannot be held liable under § 1983 on a *respondeat superior* theory. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). The action must also be dismissed as to Day County.

Now, therefore,

IT IS ORDERED:

1. Plaintiff's motion, Doc. 21, for summary judgment is denied.

2. Defendants' motion, Doc. 23, for summary judgment is granted.

3. Plaintiff's motion, Doc. 33, for sanctions is denied.

Dated this 29th day of August, 2011.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
DEPUTY
(SEAL)

7